UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAUGHTERS OF CHARITY NATIONAL HEALTH SYSTEM, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:04-CV-754 CAS ) |
| AMERICAN INTERNATIONAL GROUP, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. For the following reasons, the Court will deny the parties' motions for summary judgment.

**I. Background**

Plaintiffs Daughters of Charity National Health System, Inc. ("DCNHS"), Ascension Health, and Daughters of Charity Foundation ("Foundation") filed this action against American International Group, Inc., and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") in Missouri state court. On June 17, 2004, defendants removed the action to this Court. The Court dismissed plaintiff Ascension Health and defendant American International Group from this action on January 26, 2005.

In plaintiffs' Amended Complaint, plaintiffs request a declaration of the parties' respective rights and liabilities under an insurance policy issued by National Union, including a declaration that National Union's insurance policy provides plaintiffs with insurance coverage for an underlying action in Texas. Plaintiffs also assert claims for breach of contract and breach of fiduciary duty/tortious bad faith. National Union filed a motion for summary judgment on all claims in the complaint asserting

that the Foundation is not an insured under the policy and that there is no coverage under the policy for the claims asserted on behalf of DCNHS.

## II. Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary

judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).

**III. Discussion**

**A. Facts**

The Court finds the following facts as true for purposes of summary judgment.[1] Plaintiff DCNHS is a non-profit corporation organized and existing under the laws of Missouri. Plaintiff Foundation is a non-profit corporation organized and existing under the laws of Missouri. Defendant National Union is a corporation organized and existing under the laws of the State of Pennsylvania, and was at all relevant times authorized to transact and transacting insurance business in the Missouri. National Union issued its insurance policy number 486-46-22 to DCNHS. In 1996, DCNHS-West Central ("West Central") was the sole corporate member of St. Paul University Hospital ("St. Paul"). In 1996, St. Paul was a non-profit hospital operating in Dallas, Texas. In 1996, DCNHS was the sole corporate member of West Central.

As West Central's sole corporate member, DCNHS provided St. Paul with various services, including cash management and investment oversight services. St. Paul regularly transferred funds from its local bank account into a depository bank serving the system of hospitals comprising DCNHS. The funds transferred by St. Paul were tracked through DCNHS's participant record keeping system. On a monthly basis, excess funds in St. Paul's operations account could be transferred to another account carried under St. Paul's name, titled the "funded depreciation" account. By 1996, the value of the investments in St. Paul's funded depreciation account was approximately $70 million. On April 1, 1996, West Central received a transfer of $60 million from

---

[1]These facts were included in plaintiffs' and defendant's statements of uncontroverted material facts and were admitted to by parties in their respective responses.

3

St. Paul's funded depreciation account through a bookkeeping entry in DCNHS's participant record keeping system (the "Transfer"). Approximately one year later, West Central re-transferred the proceeds from the Transfer to what is now plaintiff Foundation. As of April 1, 1997, West Central was merged into DCNHS.

In St. Paul University Hospital v. Ascension Health, Cause No. 02-04686-M (D. Dallas County, Tex., 298th Circuit) (the "Texas case"), the Texas Attorney General, St. Paul and the St. Paul Foundation sued the plaintiffs in the instant case as well as Ascension Health. The lawsuit was filed claiming that the Transfer was improper and seeking the return of the transferred money. Ascension Health is a Missouri not-for-profit corporation and is the sole member of DCNHS and the Foundation. Ascension Health became the sole member of the entity now known as the Foundation in 1999. Ascension Health became the sole member of DCNHS in August 2001. The Texas case defendants settled the Texas case on May 12, 2004, by agreeing to pay St. Paul $23 million. Plaintiffs filed this declaratory judgment action to determine the parties' rights and obligations under the policies and obtain reimbursement for the settlement and defense costs in the Texas case. National Union asserts that the Foundation is not an insured under the policy and that DCNHS is not entitled to coverage because it disgorged funds.

**B. Choice of Law**

In a case where federal jurisdiction is based on diversity of citizenship, the law of the forum state is applied when deciding choice of law issues. Klaxon Co. v. Stentor Electrical Mfg. Co., 313 U.S. 487 (1941); Whirlpool Corp. v. Ritter, 929 F.2d 1318, 1320 (8th Cir. 1991). "Missouri has adopted sections 188 and 193 of the Restatement (Second) of Conflicts (1971) in deciding choice of law issues regarding insurance contracts." Atlas Intermodal Trucking Serv. v. United Fire & Casualty Co., 973 S.W.2d 174, 177 (Mo. Ct. App. 1998) (citations omitted). In an action regarding a contract

of fire, surety, or casualty insurance, the Court must begin its analysis with section 193. Byers v. Auto-Owners Ins. Co., 119 S.W.3d 659, 663 (Mo. Ct. App. 2003).

Section 193 of the Restatement provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the event the local law of the state will be applied.

"An insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location . . . in the state where it will be during at least the major portion of the insurance period." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 193 cmt. b (1971). "[Where] the honesty and fidelity of a particular person is the subject of the insurance, the parties will usually know beforehand where he will spend most of his time during the life of the policy." Id. "A special problem is presented by multiple risk policies which insure against risks located in several states." Id. cmt. f. If there is a multiple risk policy, the Court should apply the law in accordance with the law where the risk occurred. Id. For example, if a policy insured houses located in states X, Y, and Z and the house in state X is damaged by fire, the law of state X would apply. Id.

Plaintiffs assert that the location of the insured risk is in Missouri and comment f of § 193 is inapplicable because under the policy, the wrongful acts of Daughters of Charity's various affiliates and subsidiaries are covered under the policy, but non-Missouri affiliates and subsidiaries were not involved in the St. Paul action. Plaintiffs also state that when the "honesty and fidelity" of an insured is the subject matter of insurance, as in a wrongful acts policy, the most critical fact is the location of the insured. Defendant contends that the location of the insured risk is in Texas because that is where West Central operated St. Paul Hospital and the policy insures multiple risks. Further, defendant states that plaintiffs wrongly equate wrongful acts with "honesty and fidelity" because the

5

policy does not insure plaintiffs' "honesty and fidelity," but the policy does exclude fraud from coverage.

DCNHS seeks coverage regarding certain actions that took place in Texas during the time it operated St. Paul Hospital. DCNHS is located in Missouri, but the acts for which it seeks coverage occurred at its Texas location. The basis of this lawsuit concerns whether plaintiffs' actions in its Texas location are covered under the policy. The Court finds that the principal location of the insured risk in this action is Texas. The policy in this action covers affiliates, subsidiaries, and missions in several states including Arkansas, Texas, Indiana, New York, California, Maryland, and Missouri. Thus, the policy is a multiple risk policy and the Court should apply the law in accordance with the law where the risk occurred. Therefore, the Court will apply Texas law during the trial of this action.

### C. Genuine Dispute about Issues of Material Fact

The Court finds that there are genuine issues of material fact which preclude the entry of summary judgment for the parties, including but not limited to whether the Foundation is covered under the policy; whether policy number 486-46-22 offers coverage for the Texas case, and if coverage exists under the policy, whether and the amount of allocation to National Union, and whether defendant is liable for a breach of fiduciary duty/tortious bad faith.

## IV. Conclusion

Based on the foregoing, the Court will deny the parties' cross-motions for summary judgment. The Court will apply Texas law during the trial of this action.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's second motion for summary judgment is **DENIED**. [Doc. 78]

**IT IS FURTHER ORDERED** that plaintiffs' second motion for summary judgment is **DENIED**. [Doc. 86]

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to request the Court to consider the parties' second motion for summary judgment concurrently is **DENIED as moot**. [Doc. 117]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of March, 2006.